**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Tucker,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-17-00442-TUC-EJM<br><br>**ORDER** |

      Plaintiff Cynthia Tucker ("Tucker") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Tucker raises three issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by failing to include limitations related to Tucker's Crohn's disease in the residual functional capacity ("RFC") assessment; 2) the ALJ erred by failing to include any manipulative limitations in the RFC; and 3) the ALJ failed to provide clear and convincing reasons to discount Tucker's testimony. (Doc. 18).

      Before the Court are Tucker's Opening Brief, Defendant's Response, and Tucker's Reply. (Docs. 18, 22, & 23). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that this matter should be reversed and remanded for further administrative proceedings.

## I.    Procedural History

      Tucker filed an application for Social Security Disability Insurance and

Supplemental Security Income on December 6, 2013. (Administrative Record ("AR") 89). Tucker alleged disability beginning on November 3, 2010 based on osteoarthritis in the hands, arthritis in knees and back, tension headaches, degenerative disc disease, degenerative joint disease, torn meniscus right knee, possible kidney disease, depression, and bowel issues. (AR 89–90). Tucker's application was denied upon initial review (AR 98) and on reconsideration (AR 124). A hearing was held on March 3, 2016 (AR 69), after which ALJ Myriam C. Fernandez Rice found, at Step Four, that Tucker was not disabled because she could perform her PRW as a cashier. (AR 21). On July 10, 2017 the Appeals Council denied Tucker's request to review the ALJ's decision. (AR 1).

Tucker's date last insured ("DLI") for DIB purposes is June 30, 2015. (AR 111). Thus, in order to be eligible for benefits, Tucker must prove that she was disabled during the time period of her alleged onset date ("AOD") of November 3, 2010 and her DLI of June 30, 2015.

## II. Factual History[1]

Tucker was born on March 7, 1958, making her 52 at the AOD of her disability. (AR 111). She has past relevant work as a cashier, a patient care technician, and a stocker. (AR 83).

### A. Treating Physicians

On November 6, 2008 Tucker saw Dr. Wintzer for right arm pain. (AR 667). She said it was in her elbow but on further questioning it was down into her hand with numbness and tingling, worse with repetitive motions or lifting. On exam Tucker had full ROM with somewhat decreased grip strength, right greater than left. (AR 668). Dr. Wintzer assessed ulnar nerve entrapment and carpal tunnel syndrome not really improving and referred Tucker for PT and opined that Tucker was cleared to return to work with a 5 pound lifting limitation. (AR 666, 668).

On November 13, 2008 Tucker reported continued pain in both wrists with

---

[1] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to Tucker's claims on appeal.

numbness and tingling. (AR 664). Dr. Wintzer noted she was not taking ibuprofen on a regular basis so she was not getting the anti-inflammatory affect. On exam she had full ROM in the upper extremities with positive Tinel's sign on the right. (AR 665). Dr. Wintzer assessed probable carpal tunnel syndrome and ulnar nerve entrapment and referred Tucker to an orthopedic hand specialist.

A November 21, 2008 letter from Dr. Safdar notes that Tucker had an unremarkable EGD and colonoscopy but that she was found to have erosive esophagitis due to acid reflux. (AR 829). His impression was GERD well controlled with medication and suspected irritable bowel syndrome.

On December 1, 2008 Tucker saw Dr. Goode for evaluation of hand pain and denied numbness or tingling. (AR 828). He noted there was a question of carpal tunnel but her symptoms did not seem consistent with that, that she had left greater than right thumb arthritis, and that her x-rays showed some early wear and sclerosis. (AR 827). Dr. Goode gave her a cortisone/lidocaine injection and Tucker was not interested in PT or a splint. (AR 828).

On January 15, 2009 Tucker saw Dr. Goode for a follow up. He noted that the injection did not make her feel better long term, though it was unclear if it did initially, and that it was hard to get  handle on how much it was really bothering her. (AR 328). Tucker denied tingling and reported the pain was all day every day. On exam her grip strength was moderate and CMC grind was positive,[2] and Dr. Goode recommended thumb splints.

A December 15, 2009 ultrasound of the abdomen showed no acute disease and mild hepatomegaly.[3] (AR 964).

On December 17, 2009 Tucker reported abdominal pain and Dr. Wintzer assessed probably GERD and gastritis. (AR 646–47).

A March 9, 2010 letter from Dr. Safdar notes that Tucker had severe pain and

---

[2] Test for thumb arthritis

[3] Abnormal enlargement of the liver

discomfort in the abdomen and that an EGD and colonoscopy were unremarkable. (AR 812). The plan was to evaluate Tucker for gallbladder dysfunction.

On March 27, 2010 Tucker went to the ER and was diagnosed with biliary colic.[4] (AR 890). An ultrasound of the abdomen showed stable mild hepatomegaly. (AR 995).

A March 30, 2010 ultrasound of the abdomen was normal. (AR 368–69).

On March 31, 2010 Tucker reported abdominal pain with no diarrhea. (AR 639–40). Dr. Wintzer noted change in HIDA[5] scan and referred her to surgery. (AR 641).

An April 9, 2010 letter from Dr. Safdar notes that Tucker had a significant history of abdominal pain, likely related to underlying gallbladder disease. (AR 792).

On April 13, 2010 Tucker presented to the ER with severe abdominal pain; she was scheduled to have her gallbladder out in May. (AR 788). She was admitted for pain control secondary to probable biliary colic. (AR 789–90).

On November 3, 2010 Tucker was seen for a right wrist injury that occurred one week prior at work. (AR 361). Tucker reported aching pain, 4/10, and had tried nothing to relieve her symptoms. On exam she had tenderness of the right wrist, good flexion, extension, abduction, and adduction, excellent approximation of thumb and fifth finger, and decreased grasp strength. (AR 363). X-rays were normal and Tucker was placed in a splint. (AR 364, 410).

On November 9, 2010 Tucker was seen for increased wrist pain after picking up a gallon of milk; she had not seen her PCP yet and requested a referral to a hand specialist. (AR 411). Tucker was instructed to continue RICE and keep the splint on until she was evaluated by her PCP or specialist. (AR 414).

On November 10, 2010 Tucker saw Dr. Wintzer for her wrist sprain. (AR 419). On exam she had tenderness, no swelling, full ROM, good pulses, reflexes 2/4 and symmetric, and strength 5/5 and symmetric. (AR 420). Dr. Wintzer recommended wrist

---

[4] Stomach pain caused by gall stones

[5] Imaging procedure used to diagnose problems of the liver, gallbladder and bile ducts

exercises, continue splint, naproxen for pain, and referred Tucker to a specialist.

On November 16, 2010 Tucker reported she had an orthopedist appointment the following week but that she needed a work excuse because she worked at Walgreens and there was no light duty. (AR 422). On exam she had mild swelling and tenderness with normal ROM. (AR 423).

A November 22, 2010 note from Dr. Wintzer states that Tucker should avoid lifting more than 5 pounds with her right arm and avoid repetitive lifting or twisting motions with her right wrist. (AR 426).

On November 23, 2010 Tucker saw Dr. Arnold for evaluation of her wrist injury. (AR 427). On exam she had moderate tenderness, normal ROM, normal strength and tone, intact sensation, negative Tinel's sign and Phalen sign, and normal x-rays. (AR 428). The assessment was tenosynovitis with a recommendation to use a splint and ice three times a day.

On December 14, 2010 Tucker saw Dr. Arnold and reported she was only using the splint part time. (AR 430). On exam she had moderate tenderness, normal strength and tone, and intact sensation and pulses. (AR 431). Dr. Arnold recommended ice and wearing the splint full time.

On December 28, 2010 Tucker saw Dr. Arnold and was no better. (AR 432). On exam she had marked tenderness to palpation, normal ROM, normal strength and tone, and intact sensation and pulses. (AR 433). Dr. Arnold recommended a splint, ice, and a MRI. The MRI on January 7, 2011 was normal. (AR 437).

On January 13, 2011 Tucker saw Dr. Arnold. (AR 438). On exam she had a volar radial 2 cm mass 2 inches proximal to wrist joint, tenderness, normal ROM, normal strength and tone, and intact sensation and pulses. (AR 439). Dr. Arnold assessed a new mass on the forearm and referred her to Dr. Medlen.

On March 29, 2011 Tucker saw Dr. Hayden for an IME for her workplace injury. (AR 443). Tucker reported constant wrist pain, 7–8/10 without the splint and 3–4/10 with the splint, and said she wore the splint 6–8 hours a day. (AR 444). Tucker also reported

some pain in the forearm radiating into the wrist when lifting a heavy object without her splint. She had a history of arthritis in both thumbs, intermittent pins and needles sensation in the forearm, and felt her right wrist ROM was less than the left. (AR 445). The impression was:

> Clinically, there were no objective findings and no evidence of a right wrist/forearm mass or tenosynovitis. Her right wrist splint was nearly pristine in appearance despite the fact that the patient stated she wore the splints 7–8 hours per day for the past several months. Ms. Tucker's clinical examination findings were diffuse and non-localizing. . . . Although Ms. Tucker's MRI scans did show some degenerative ulnar wrist changes, these are chronic and preexisted her industrial injury claim and would not have been caused or aggravated by the injury she described. Her symptoms, moreover, are not consistent with the MRI findings. Ms. Tucker was able to freely gesture during conversation with her right upper extremity despite her subjective complaint of 8/10 pain. She had no loss of range of motion. She had no weakness of the wrist . . . and did not complain of any pain when testing.

(AR 466). X-rays of the wrists showed arthritis in the thumbs, more severe on the left, and no acute abnormalities, (AR 491), and an EMG nerve conduction study was normal. (AR 492). The overall impression was that Tucker's subjective complaints were not causally related to her industrial injury claim, and Dr. Hayden opined that she had reached maximum medical improvement and could return to her job as a cashier at Walgreens without restrictions. (AR 466–67).

On April 7, 2011 a MRI of the right forearm and wrist showed degenerative joint disease and a 2–3 mm cyst. (AR 736).

On May 12, 2011 Tucker saw Dr. Wintzer for a follow up for her wrist. (AR 501). On exam she had some pain but no swelling, good ROM, strength 5/5 symmetric, and reflexes 2/4 symmetric. (AR 502). Dr. Wintzer referred her to orthopedics, recommended she get a job where she wasn't doing repetitive motions with her wrists and repetitive lifting, and recommended she use the wrist splint when doing repetitive motions or lifting.

On April 30, 2012 Tucker presented to the ER with abdominal pain; she was discharged home with a diagnosis of kidney disease. (AR 866–67).

On May 1, 2012 a CT scan of the abdomen showed no specific etiology for Tucker's abdominal pain. (AR 722).

On August 15, 2013 Tucker saw Dr. Wintzer and reported bilateral wrist pain and wondered if it was related to her work injury. (AR 608). On exam she had good ROM, positive Tinel's bilaterally, and decreased grip strength on the right. (AR 610). Dr. Wintzer assessed bilateral carpal tunnel and recommended wrist splints.

On January 30, 2014 Dr. Wintzer noted an EGD with Dr. Safdar showed chronic inactive gastritis and esophagitis, and Tucker was on Omeprazole. (AR 582, 584). On exam she did not complain of any abdominal pain or diarrhea. (AR 583).

On March 2, 2014 Tucker went to the ER for a headache and reported chronic loose stools associated with her GERD. (AR 1003).

A July 22, 2014 colonoscopy showed internal hemorrhoids, no evidence of colitis, and normal terminal ileum. (AR 1082).

An August 16, 2014 letter from Dr. Safdar notes that Tucker had persistent complaints of diarrhea and at times incontinence of stools, no blood in the stool, and generalized abdominal pain. (AR 1074). His impression was terminal ileitis.

On September 26, 2014 Tucker was seen for pain and discomfort in her abdomen and diarrhea. (AR 1073). Dr. Safdar noted she was being maintained on medication and his impression was "terminal ileitis noticed on the colonoscopy and the biopsy with a normal colon consistent likely with possible Crohn's disease."

On October 1, 2014 Tucker complained of bloatedness and some nausea; Dr. Safdar recommended an upper endoscopy to avoid repeat visits to the ER for abdominal pain. (AR 1072).

On December 3, 2014 Dr. Wintzer noted that Tucker was on sulfasalazine prescribed by Dr. Safdar for Crohn's disease and that she was doing well with her abdominal pain and her diarrhea was controlled with the medication. (AR 1098–99).

A June 14, 2015 CT of the abdomen showed no changes of the small or large bowel to suggest active Crohn's. (AR 1223).

On July 17, 2015 Tucker was seen to establish care at Rio Nuevo Family Practice. She reported that she was diagnosed with Crohn's the previous year, was on medication and doing fine, and had no diarrhea or blood in her stool or abdominal pain. (AR 1174). Tucker also reported that she was diagnosed with Barret's esophagus and GERD, had back pain, and tension headaches/migraines.

On August 13, 2015 Tucker reported no epigastric distress or difficulty controlling her bowels, and on examination fine coordination in her hands was intact. (AR 1184).

B.     Plaintiff's Testimony

On a Function Report dated April 9, 2014, Tucker reported that she could not work because of back pain, hand and wrist pain, could not lift heavy objects, frequent bowel movements and accidents, headaches, tiredness, depression, arthritis in knees, and torn meniscus in right knee. (AR 225). She spends her days reading, watching TV, napping, shopping for groceries, cooking, and doing laundry, and has no problems with personal care. (AR 226–27). She goes out every day and walks, uses public transportation, and rides a motorcycle with her husband. (AR 228). She no longer bowls because of hand, wrist, and back pain. (AR 229). Her illness affects her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and use her hands because of pain in her back, wrists, hands, and arthritis in her knees. (AR 230). She uses a brace prescribed by a doctor on her right wrist when it's very painful. (AR 231).

Another Function Report dated August 17, 2014 lists essentially the same daily activities and functional limitations as the April 9, 2014 form. (AR 256–261). In addition, Tucker reported that it was hard for her to go out and do social activities if there was no restroom nearby, that she could lift less than 10 pounds, and that she used a walker and a brace for her right knee prescribed by her doctor. (AR 261–62).

At the hearing before the ALJ, Tucker testified that her last job at Walgreens ended because she hurt her wrist and worker's compensation dropped her; two doctors told her she has a cyst on the nerve in her wrist. (AR 75). She has arthritis in her wrists and hands, degenerative disc disease, ulcerative colitis, Barret's esophagus, and Crohn's

disease. (AR 76). She must always be aware of where the restroom is because, "when I have to go, I have to go," and she had quite a few accidents at her last job. (AR 76, 79–80). Most of the time she can make it to the restroom, but if she has to wait then she will have an accident. (AR 80). Her incontinence has become more frequent since she last worked, and even with medication she still has very loose stools. (AR 81).

Tucker takes Gabapentin for her nerves, Sulfasalazine for her Crohn's, has not had any surgeries for Crohn's, and has had no treatment for her DDD. She also gets migraines and takes medication for depression. (AR 76–77). The doctor prescribed braces for her wrists but they made her hands swell up so she doesn't use them. (AR 77).

Tucker stated she can no longer work as a cashier because she can't lift anything heavy with her hands, wrists, and back, and can't stand for long periods of time. (AR 78). She uses a walker to walk ½ mile to the grocery store and back. She does not drive because their only car is a stick shift and she doesn't drive those. (AR 79). On a typical day she gets up, watches TV or reads, and does light cleaning. (AR 79). She also lies down 4–5 hours each day due to pain and headaches. (AR 81).

C.    Lay Testimony

Tucker's husband completed a Function Report—Third Party on April 9, 2014 and reported that Tucker could not work because of back pain, could not lift heavy things, frequent bowel movements and accidents, frequent headaches, and tiredness. (AR 233). He stated that she spends her days watching TV, reading, and napping, and he helps her with cooking and laundry as much as he can. (AR 234–35). Tucker goes outside daily and shops once a week for groceries. (AR 236). She cannot bowl anymore because of pain in her back and hands. (AR 237). Tucker's conditions affect her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and use her hands due to pain in her back, wrist, and knees. (AR 238). She wears a brace/splint on her right wrist when it's hurting her. (AR 239).

D.    Vocational Testimony

At the hearing before the ALJ, Kathleen McAlpine testified as a vocational expert.

She stated that Tucker's past work as a cashier was light, and her work as a patient care tech and stocker was medium. (AR 83).

The ALJ asked McAlpine to assume an individual with a light RFC who could lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk for 6 hours, and sit for 6 hours. (AR 84). McAlpine testified such a person could do the cashier job. For the second hypothetical, the ALJ added a limitation of handling and fingering limited to frequent, and McAlpine testified that a person could still do the cashier job. The ALJ then asked if the person were limited to sedentary work, if there would be any transferrable skills, and McAlpine said no.

Tucker's attorney asked McAlpine to assume an individual who needed two extra 10 minute breaks per day, without any particular timing, and McAlpine testified such a person could not maintain employment. (AR 85). McAlpine further stated that a person could be off-task less than 5 minutes per hour due to pain or other conditions before they would be unemployable.

E.    ALJ's Findings

The ALJ found that Tucker had the severe impairments of degenerative disc disease, arthritis, heart arrhythmias, headaches, and Crohn's disease. (AR 15). The ALJ found Tucker's depression[6] and shoulder pain were not severe because they had no more than a minimal effect on her ability to work, and that her alleged meniscus tear was not medically determinable because there were no findings in the medical record to substantiate it. (AR 16–17).

The ALJ found that Tucker's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible for the reasons explained in the decision. (AR 19). The ALJ summarized the medical findings and noted the

---

[6] The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *Id.* The ALJ found Tucker had no limitation in activities of daily living or social functioning, mild limitation in concentration, persistence, or pace, and no episodes of decompensation of extended duration.

following: Tucker was diagnosed with degenerative disc disease and testified that she could not stand for long periods of time and uses a walker to walk to the grocery store, but she also testified that she had not had any treatment for her back; Tucker testified she could not lift heavy objects due to arthritis in her wrists and hands and that the worker's compensation judge denied her claim for lack of evidence; Tucker had normal wrist x-rays on November 3, 2010 and was given a brace, normal wrist MRI in January 2011, no pain with full ROM in the wrist on March 19, 2011, and was noted to have intact fine coordination in her hands on June 13, 2015; Tucker testified that because of her Crohn's she must always be aware of where restrooms are and that she has had occasional accidents, but in July 2015 Tucker stated she was on medication and doing fine, and in August 2015 her Crohn's was stable; Tucker reported she gets migraines and the record documents she has a prescription to use as needed, but in August 2013 she reported headaches twice monthly and nothing indicates they have become more frequent since then; the record reflects that Tucker has cardiac arrhythmia but she did not allege any specific limitations and testing in August 2015 was normal. (AR 19–20). The ALJ also noted that the third party function report reflected certain limitations, but also reflected that Tucker performed many ADL, and when read in context of the entire record, did not militate in favor of limits beyond those assessed by the ALJ. (AR 21). The ALJ concluded that Tucker may experience some degree of pain and discomfort with certain activities, but that mild to moderate pain or discomfort was not, in itself, incompatible with the performance of sustained work activity, and that neither the objective medical evidence nor Tucker's testimony established that her functioning was so impaired as to preclude all work activity. (AR 19–20).

The ALJ gave partial weight to the opinions of the state agency medical consultants because they opined Tucker could perform medium work but they did not have the opportunity to review information submitted after their assessments were complete. (AR 20). The ALJ gave great weight to the state agency psychological consultant opinions because their assessments were based on a review of the complete

case record and Tucker's statements. (AR 20).

The ALJ found that Tucker had the RFC to perform the full range of light work with no limitations, and that she could perform her PRW as a cashier. (AR 18, 21). The ALJ therefore concluded Tucker was not disabled. (AR 21–22).

### III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

Here, Tucker was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. A RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the

record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotation marks and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (internal citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (internal citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains

substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Analysis

Tucker argues that the ALJ erred by failing to include any non-exertional limitations in the RFC relating to her Crohn's disease or any manipulative limitations relating to her wrist pain. Tucker further argues that the ALJ erred in negatively assessing her credibility by misconstruing her activities of daily living ("ADL"). Tucker requests that the Court remand this matter for further consideration of her maximum RFC in light of her statements about the limiting effects of her impairments.

The Commissioner argues that the ALJ reasonably found Tucker's allegations were not credible and pointed to inconsistencies that cast doubt on Tucker's claims and a lack of supportive medical evidence. The Commissioner further states that the ALJ thoroughly reviewed the record and reasonably determined a RFC supported by the objective medical evidence, which showed relatively mild findings and no objective evidence of significantly limiting abnormalities or disabling symptoms.

The Court finds that the ALJ failed to provide clear and convincing reasons to discount Tucker's subjective symptom testimony. This error impacted the RFC assessment and the hypotheticals posed to the VE. Consequently, the error was not harmless because it ultimately impacted the ALJ's nondisability finding. Because factual issues remain regarding whether Tucker is disabled under the regulations, the Court will remand this matter for further administrative proceedings.

### A. Credibility

Tucker argues that the ALJ failed to provide clear and convincing reasons to discount her subjective testimony by misconstruing her ADL. Tucker notes that the ALJ did not specify which ADL she found inconsistent with Tucker's subjective complaints,

but referenced the third-party function report completed by Tucker's husband. Tucker also states that the ALJ failed to provide another valid reason to discount her testimony, other than pointing to some relatively normal exam findings, which only show that at times her Crohn's was stable, but not that she was healed.

"An ALJ's assessment of symptom severity and claimant credibility is entitled to great weight." *Honaker v. Colvin*, 2015 WL 262972, *3 (C.D. Cal. Jan. 21, 2015) (internal quotations and citations omitted). This is because "an ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Treicherler v. Comm'r. Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). "If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court may not engage in second-guessing." *Honaker*, 2015 WL 262972 at * 3 (internal quotations and citation omitted).

While questions of credibility are functions solely for the ALJ, this Court "cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Comm'r Soc. Sec. Admin.* 466 F.3d 880, 885 (9th Cir. 2006). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Further, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

While it is permissible for an ALJ to look to the objective medical evidence as one factor in determining credibility, the ALJ's adverse credibility finding must be supported by other permissible evidence in the record. *Bunnell*, 947 F.2d at 346–47 ("adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). However, "an ALJ may reject a claimant's statements about the severity of his symptoms and how they affect him if those statements are *inconsistent with or contradicted by* the objective medical evidence." *Robbins*, 466 F.3d at 887 (emphasis in original). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations and citations omitted).

The ALJ did not make a finding that Tucker was malingering; therefore, to support her discounting of Tucker's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. Tucker specifically challenges the ALJ's finding that her testimony was not fully credible because the third party function report completed by Tucker's husband reflected that Tucker performed many ADL. This is not a clear and convincing reason to reject Tucker's testimony.

"There are two grounds for using daily activities to form the basis of an adverse credibility rating. The first is when the activities contradict prior testimony. The second is when the activities meet a threshold for transferable work skills." *Strutz v. Colvin*, 2015 WL 4727459, at *5 (D. Or. Aug. 10, 2015); *see also Orn v. Astrue*, 495 F.3d at 639 ("[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting.'" (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Molina*, 674 F.3d at 1112–13 (ADL "may be grounds for discrediting the claimant's testimony to the extent that they contradict the claims of a

totally debilitating impairment"). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

"ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison*, 759 F.3d at 1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Tucker's husband reported that she spends her days watching TV, reading, and napping, and that he helps her with cooking and laundry as much as he can. (AR 234–35). He also noted that she goes outside daily and shops once a week for groceries, cannot bowl anymore because of pain in her back and hands, and wears a brace/splint on her right wrist when it's hurting her. (AR 236–237, 239). The ALJ did not explain how these daily activities undermine Tucker's subjective symptom testimony, and there is no inconsistency between the third party function report and Tucker's own self-report of her daily activities. Further, "there is neither evidence to support that [Tucker's] activities were 'transferrable' to a work setting nor proof that [Tucker] spent a 'substantial' part of h[er] day engaged in transferrable skills." *Orn*, 495 F.3d at 639. Tucker's daily activities

of simple meal preparation, washing dishes and laundry, and watching TV "are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace," especially when taking into consideration her reported lifting restrictions and struggles with incontinence. *Id*. Tucker's daily activities, as both she and her husband described them, do not contradict her other testimony, and "[t]he record does not suggest that Plaintiff at any time reported that she performed activities which would translate to sustained activity in a work setting on a regular and continuing basis for eight hours a day, five days a week." *Benjamin*, 2014 WL 4437288 at *5. "Accordingly, the supposed inconsistencies between [Tucker's] daily activities and her testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit [her] testimony regarding her [] impairments." *Garrison*, 759 F.3d at 1016.

In sum, the undersigned finds that the ALJ failed to articulate clear and convincing reasons for rejecting Tucker's subjective symptom testimony. Further, this error was not harmless. Had the ALJ properly considered Tucker's testimony regarding her symptoms and limitations, it would have also impacted the ALJ's RFC finding and the hypothetical posed to the VE. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (finding VE opinion could not be relied on where ALJ failed to provide clear and convincing reasons to reject claimant's testimony and did not include claimant's subjective limitations in the RFC). Thus, this error was harmful because it affected the ultimate nondisability determination. *See Molina*, 674 F.3d at 1115.

B.    RFC

RFC is "the most [a claimant] can still do despite her limitations," and includes assessment of the claimant's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what she can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The Commissioner retains the ultimate responsibility for assessing a claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ALJ was required to assess Tucker's RFC based on all the record evidence, including medical sources, examinations, and information provided by Tucker.

20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). However, the ALJ need not include all possible limitations in her assessment of what a claimant can do, but rather is only required to ensure that the RFC "contain[s] all the limitations that the ALJ found credible and supported by the substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *see also Dschaak v. Colvin*, 2015 WL 181803, *3 (D. Or. Jan. 14, 2015) ("An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony.").

Here, the ALJ found that Tucker had the capacity to perform the full range of light work[7] with no restrictions. (AR 18). Tucker specifically objects to the ALJ's failure to include any non-exertional limitations in the RFC relating to her Crohn's disease or any manipulative limitations relating to her wrist pain.

### i.  Crohn's Disease

Tucker argues that the ALJ erred by assessing a light RFC that did not include any non-exertional limitations related to her Crohn's disease. Tucker specifically alleges that Crohn's affects her ability to be on-task because of the need for frequent bathroom breaks and time to clean up after accidents. (Doc. 9 at 18). Tucker also states that pain from Crohn's presumably interferes with her concentration, persistence, and pace, though there is nothing in the record to support this.

While the ALJ found that Tucker has the severe impairment of Crohn's disease, there is limited information in the record supporting this diagnosis. At a September 26, 2014 appointment with Ironwood Gastroenterology, Dr. Safdar's impression was "terminal ileitis noticed on the colonoscopy and the biopsy with a normal colon

---

[7] As defined by 20 C.F.R. 404.1567(b): "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

consistent likely with possible Crohn's disease." (AR 1073). Dr. Safdar noted Tucker complained of abdominal pain and episodes of diarrhea, was being maintained on Entocort, and was given samples of Apriso. At a December 3, 2014 appointment, Dr. Wintzer noted that Tucker was on sulfasalazine prescribed by Dr. Safdar for Crohn's disease and that she was doing well with her abdominal pain and her diarrhea was controlled with the medication. (AR 1098–99). A June 15, 2015 CT of the abdomen showed "no changes of the small or large bowel to suggest active Crohn's." (AR 1223). At a July 17, 2015 appointment at Rio Nuevo Family Practice, Tucker reported that she was diagnosed with Crohn's the previous year, was on medication and doing fine, and had no diarrhea or blood in her stool. (AR 1174). Finally, at an August 14, 2015 ER visit for chest pain, Tucker reported no diarrhea or abdominal pain and said her Crohn's was stable. (AR 1202, 1209). Thus, while the medical record does reflect a history of gastrointestinal issues, there is very limited information in the voluminous record in this case specific to Tucker's Crohn's disease, and the most recent medical findings document no active problems related to Crohn's. Further, there is nothing in the record stating that any of Tucker's treating physicians recommended limitations for her Crohn's disease or other gastrointestinal issues.

In sum, there is little documentation in the record to support Tucker's alleged need for non-exertional limitations due to her Crohn's disease. However, in light of the Court's finding that the ALJ erred in negatively assessing Tucker's credibility, the Court finds that on remand the ALJ must reassess Tucker's subjective symptom testimony as it relates to her alleged need for non-exertional limitations for her Crohn's disease.

ii.   Manipulative Limitations

Tucker also argues that the ALJ erred in failing to include any manipulative limitations related to her wrist impairment by relying on records showing normal exams while ignoring later findings that were abnormal, and misconstruing the worker's compensation examination finding.

The ALJ noted that Tucker had normal x-rays on November 3, 2010 and was

given a brace; a January 2011 MRI of the wrist was normal; at a March 19, 2011 appointment Tucker had no pain with full ROM in the wrist; on May 12, 2011 Dr. Wintzer advised Tucker to get a job that did not require her to perform repetitive motions or lifting with the wrists; and as recently as June 13, 2015[8] Tucker had intact fine coordination in her hands. (AR 19). The ALJ also noted that in considering Tucker's wrist impairment, it did not meet listing 1.02 (major dysfunction of a joint) because the listing requires an inability to perform fine and gross movements effectively and the medical records showed Tucker had good flexion, extension, abduction, and adduction in her wrist. (AR 18).

Tucker argues that the ALJ ignored abnormal findings including an April 7, 2011 MRI that showed degenerative joint disease and a 2–3 mm cyst (AR 736), tenderness and a palpable mass on January 13, 2011 (AR 439), and reduced strength in the right forearm and positive pain to palpation on March 29, 2011 (AR 457–58). However, in addition to the evidence noted by the ALJ, the record also reflects that Tucker consistently had normal/full/good ROM of the wrists throughout the treatment record. Tucker cannot only point to findings that support her alternate interpretation of the evidence.

While there is little information in the record documenting recommended limitations for Tucker's wrist impairment, there is some support for Tucker's claim that she requires manipulative limitations. A November 6, 2008 note from Dr. Wintzer stated that Tucker was cleared to return to work with a 5 pound lifting limitation; however, this this was two years before Tucker's AOD. (AR 666, 668). A November 22, 2010 note from Dr. Wintzer states that Tucker should avoid lifting more than 5 pounds with her right arm and avoid repetitive lifting or twisting motions with her right wrist; this note was shortly after Tucker's AOD of November 3, 2010. (AR 426). Neither of the notes indicates how long the restrictions were in place for. On May 12, 2011 Dr. Wintzer recommended that Tucker get a job or change professions where she wasn't doing

---

[8] This date appears to be an error in the ALJ's decision, as the record documents that the appointment was actually on August 13, 2015.

repetitive motions with her wrists and repetitive lifting, and recommended she use the wrist splint. (AR 502). The last mention of wrist pain in the record is on August 15, 2013, when Tucker saw Dr. Wintzer and reported bilateral wrist pain and wondered if it was related to her work injury. (AR 608). At that appointment Tucker had good ROM, positive Tinel's bilaterally, and decreased grip strength on the right, and Dr. Wintzer recommended wrist splints. (AR 610). However, as the ALJ noted, on August 13, 2015 Tucker was documented to have intact fine coordination in her hands. (AR 1184).

As to the worker's compensation issue, the record reflects that Tucker received temporary total disability benefits for a period of time in 2010. (AR 194–204). At a March 29, 2011 IME, Dr. Hayden's overall impression was that Tucker's subjective complaints were not causally related to her industrial injury claim, and he opined that she had reached maximum medical improvement and could return to her job as a cashier at Walgreens without restrictions. (AR 466–67). The ALJ adequately noted this in her decision when she stated that Tucker testified that the worker's compensation judge denied her claim for lack of evidence.

In sum, while it is far from clear from the record that Tucker does have any manipulative limitations due to her wrist impairment, "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "The ALJ is not a mere umpire at such a proceeding . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Moreover, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2010).

While it is the claimant's burden to prove that she is disabled, *Valentine*, 574 F.3d at 689, the ALJ's duty to further develop the record arises in cases such as this one, where the record is inadequate to allow for proper evaluation of Tucker's alleged need for manipulative limitations due to her wrist impairment. *See e.g. Garcia v. Comm'r Soc. Sec. Admin.*, 768 F.3d 925, 932 (9th Cir. 2014) ("We have consistently treated an ALJ's failure to adequately develop the record as reversible legal error."). While the ALJ cited some normal examination findings, she failed to mention the lifting restrictions assessed by Dr. Wintzer, or the multiple physician recommendations that Tucker should wear a wrist splint/brace. If the ALJ was unclear as to how long Dr. Wintzer's work restrictions were in place or whether Tucker was still advised to use a wrist splint/brace, then it was incumbent on the ALJ to probe further. Thus, because the record here is inadequate, additional development of this issue is required.

## V. Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings.'" *Brow-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds "[r]emand for further administrative proceedings is appropriate [because] enhancement of the record would be useful." *Benecke*, 379 F.3d at 593. The ALJ erred in finding that Tucker's ADL were inconsistent with her testimony regarding her impairments and in negatively assessing her credibility. Because of this error, issues remain regarding Tucker's RFC and her ability to perform work existing in significant numbers in the national economy. This Court offers no opinion as to whether Tucker is disabled within the meaning of the Act. However, the ALJ is required to

consider all of Tucker's alleged impairments, whether severe or not, in her assessment on remand, and "[t]he RFC assessment must be based on *all* the relevant evidence in the case record." SSR 96–8p, 1996 WL 374184, at *5 (emphasis in original) ("The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."); C.F.R. § 416.920(e) (ALJ must consider claimant's subjective experiences of pain).

## VI. Conclusion

In light of the foregoing, the Court **REVERSES** the ALJ's decision and the case is **REMANDED** for further proceedings consistent with this decision, including additional hearing testimony, if necessary.

Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision is remanded back to an ALJ with instructions to issue a new decision regarding Tucker's eligibility for disability insurance benefits. The ALJ will: (1) reassess Tucker's credibility and activities of daily living; (2) further consider Tucker's residual functional capacity, citing specific evidence in support of the assessed limitations, and (3) continue the sequential evaluation process to assess whether in fact Tucker is disabled within the meaning of the SSA and whether she is able to perform any work existing in the national economy.

**IT IS FURTHER ORDERED** the Clerk of the Court shall enter judgment, and close its file in this matter.

Dated this 13th day of September, 2018.

Eric J. Markovich
United States Magistrate Judge